Pettway v. Steve Marshall. We'll hear first from Mr. Clemmon. May it please the court. I, Dr. Clemmon, counsel for the appellant Bruce Pettway and his company Employer Benefits Consulting LLC. Proportionality and reasonableness are what this case is all about. Was the requisite Eighth Amendment proportionality requirement considered when Bruce Pettway's nearly half million dollar bank account was seized by Attorney General Marshall? And was that seizure reasonable within the meaning of the Fourth Amendment? Now, on the Eighth Amendment, Judge Shofrat has written for the Eleventh Circuit. We conclude that the appropriate inquiry with respect to the excessive fines clause is and is only the proportionality test. That was the U.S. versus one parcel case, a case incidentally arising right here in Montgomery. We respectfully submit that the district court missed the proportionality message when it dismissed Bruce Pettway's lawsuit. Counsel, I have a question about the Eighth Amendment claim. Really, I guess about all of it, but in particular about the Eighth Amendment claim. The state has asserted absolute immunity as a defense. And it seems to me that because of the way that we decide whether absolute immunity can apply, we need to see very specific allegations of what it is that a prosecuting authority does. Because as you know, in some circumstances, a prosecutor is entitled to absolute immunity. And in others, it's qualified immunity. And, you know, depending on whether they're prosecutorial functions, investigative functions, administrative functions, et cetera. And my concern is, I'm not sure where in the specifically what it is that the defendant here allegedly did. You know what I mean? The prosecutorial steps that this defendant took with respect to the Eighth Amendment claim. Yes, Judge Rosenbaum, we allege in the third amended complaint that the attorney general directed the investigation. He directed the raid that led to the seizure. All of these things happened before there was any indictment in the case. These were administrative, investigative activities that led to the complaint which we make in this case. And we think that the law is clear that where the prosecutor acts in an investigatory capacity, then the doctrine of immunity does not apply. Thank you. Your Honor, the facts are fairly simple. There was a gambling casino in Brighton, Alabama, licensed by that city. It was raided by the attorney general. And the attorney general took its records, investigated them for a period of time, concluded on the basis of his investigation that a $15,500 check had been placed into the bank account of my client's business. And so the attorney general fully investigated this matter. On the basis of that investigation, he then obtained in Madison County, not Jefferson County, where the bank account was located and where the alleged gambling operations took place, he obtained in Madison County a seizure warrant and proceeded then to seize my client's nearly half-million-dollar bank account. And my client therefore lost the use of it for approximately two months because we went into court as soon as we learned about it, the state court. It ended up about a month later in federal court. And in federal court, Judge Boudry, in responding to the attorney general's younger motion, found that we had plausibly alleged a bad faith claim. And she noted that it was suspect that a seizure of a nearly $20,000 account in a situation where only $15,500 was connected with gambling activities. That raised eyebrows. Can I ask you a question about the Fourth Amendment claim? I will say, just speaking for myself, I think that there may be a strong Fourth Amendment claim for the amount that was seized over the $15,500 because I'm not sure that there was any probable cause that was really alleged regarding that. But I don't see where that argument was made in the district court. And the first time it appears to me that it's made is here. And I know that your argument has been that it's their burden to show that there was probable cause. But the problem is that this is a civil case. And so it's the plaintiff's burden to show that there was a violation of the constitutional rights. So my question for you is, how should we address this? What can we rely on here? Is there anything that I've missed in the district court with respect to the issue of the probable cause as it relates to the amount over $15,500? Throughout the district court proceedings, we made the point that the amount in excess of $15,500 was excessive. And the district court was mindful of that. She indicated in her decision dismissing the case that she wasn't sure whether we were complaining about the $15,500 or the quarter of a million dollars. And she said that insofar as our claim was predicated on the quarter of a million dollars, the unfrozen money, that claim was moot. And your honors, that is precisely the claim that we are making. It is not moot because my client suffered damages. But can I ask you a question though? Where in the record in the district court will I find the argument that there wasn't probable cause as it relates to the amount over $15,500? And you will not find in the third amended complaint a specific allegation of a lack of probable cause. Those words do not appear. Okay. But is it anywhere else in the record? For example, in a brief that you wrote, or a motion, or anything of that nature? Is there any part of the record that I may have missed where you make the argument that there's no probable cause for the amounts over $15,500? Before the district court. You might use those words. Okay. Was a motion to suppress the warrant filed in the Madison County Court or anywhere? No, sir. A motion to suppress the warrant was not filed. We filed a motion to release the funds. Before the Madison County Second Court? We filed it in Jefferson County. Because that's where it was seized. And the Jefferson County judge said that there was no, she didn't have jurisdiction, so she transferred it to Madison County. It was at that point that we filed a federal lawsuit. I understand. That's when everything stopped in Madison County. Yes. Is that right? Yes. Okay. Well, the $15,000 forfeiture proceeding under the amended petition. Where is the proceeding on the in-red proceeding in Madison County now? It is before the court. It has not been adjudicated yet. It's before the court in Madison County now? Yes. The in-red proceeding? Yes. Okay. Your Honor, the district court said... And I take it also the motion to quash even the $15,000 is in that court too? Exactly. Okay. The district court based her decision on the fact that she said that the seizure was not punishment. The seizure of the currency was not punishment. Well, that's clearly wrong. She also said that our claim for the quarter of a million dollars is not ripe. It most assuredly is ripe. If the claim cannot be made now, it will never be made because the statute of limitations has already run. He suffered the hardship and the matter is ripe for judicial decision. Thank you, counsel. And you've reserved five minutes for rebuttal. We'll hear from Mr. Wilson. May it please the court. Thomas Wilson appearing on behalf of Defendant Attorney General Steve Marshall. Mr. Rosenbaum, if I might begin by addressing the absolute immunity question that you asked appellant. The absolute immunity inquiry I think is particularly useful in this case where the only defendant is in fact the chief prosecutor of the state of Alabama, Attorney General Steve Marshall. Now, when you asked about what particularly in the third amended operative complaints the appellant had cited to suggest that Attorney General Marshall had taken part in an investigation, there was no particular citation provided. And based on my reading, it doesn't exist. The only specific citation to Defendant General Marshall's activity in this case that I have found, Your Honor, comes in paragraph 36. That's docket entry in the district court docket entry 51, ECF page 7, in which the appellant stated that Defendant Special Agent Perkins had, quote, caused EBC's bank account to be frozen in Madison County. Now, critically, the claims in this case do not arise from the April 2019 seizure. So, the discussion about whether there was an investigative action by Attorney General Marshall, which again wasn't actually raised in the complaint, but it would be irrelevant in any 2019 seizure of appellant's bank account. And I would note, Your Honor, the 11th Circuit has stated that a prosecutor is entitled to absolute immunity for the factual investigation necessary to prepare a case and also that, quote, acts undertaken in preparing for the initiation. Are you aware of any lawsuit under 1983 brought against a prosecutor while the state court? Putting aside the immunity issue, this is a proceeding that is ongoing while a state court in rem proceeding was underway. That's correct. As I understand it. Is that right? That's correct, Your Honor. Are you aware of any case in which putting aside the immunity issue, a plaintiff who's interested in the state court matter proceeds with a 1983 claim against the prosecutor on the ground that the prosecutor somehow violated federal law in breaking the proceeding? I think I understand the question, Your Honor. And standing before you, no, I am not aware of any case in which that... Usually the state matter is all over with. It's like a malicious prosecution case or abusive process case brought against the prosecutor, and then there's immunity issue raised. Yes, Your Honor. I think that's correct. And if Your Honor is discussing younger abstention, I'd be happy to turn to that. Just a moment. Would Your Honor mind if I finish the thought on absolute immunity, or would you like to discuss younger abstention? Just to finish the thought. There's no younger issue in this case, in my view. Okay, Your Honor. Period. It's just that it's a suit to enjoin a state court prosecution, civil prosecution in this case, just out of the blue, sort of. There's been no history of any conduct on the part of the Attorney General to violate the law, as it were, especially with regard to the complaining party. Sure, Your Honor. I think I agree. And if I might just finish the absolute immunity point. The court has stated that acts undertaken in preparing for the initiation of judicial proceedings are entitled to prosecutorial immunity. And in this case, because the constitutional claims at issue arise directly from the search and seizure of Mr. Petway's account, prosecutorial immunity should apply because that seizure is a necessary precondition to the subsequently brought forfeiture actions, falling squarely within absolute immunity for the only remaining defendant in this case, the Chief Prosecutor of the State of Alabama. And Judge Rosenbaum, I know that you also mentioned the Fourth Amendment issue. And if I might jump into that then. I think that you're correct. Appellant has presented two different theories. One is entirely new on appeal. The the seizure of his $240,000 business bank account was unreasonable under the Fourth Amendment since the maximum fine under Alabama law for a gambling crime is $6,000. So in other words, the appellant is arguing that there is a proportionality requirement between the seizure of illicit, allegedly illicit funds, and between a fine brought down due to actions that would have underlied those funds. Which there probably is, but it's under the Eighth Amendment. I'm sorry, Your Honor? Which there probably is, but it would be under the Eighth Amendment. So if it is, I would agree that it would be under the Eighth Amendment. But I don't think that in this case, there will be necessarily a proportionality issue. Because again, we're talking about illicit funds that are subject to forfeiture. The cases cited like Bajikhajian. I think what what maybe the way that I understood the as an Eighth Amendment kind of issue is there's $15,500 at issue. There's a $6,000 maximum fine. So how can you seize $240,000 or, you know, approximately, well, over $200,000 more than is involved, especially in light of the Supreme Court jurisprudence on the multiples that are permitted. That's how I understood it. It's more of an Eighth Amendment kind of. Sorry. Yeah. Yes. No. So I think that that is closer. That being said, the Supreme Court precedent that I think you're referring to would be Bajikhajian and Tims. And in both of those cases, in Bajikhajian, the court explicitly said that the funds having that were seized had no relation to potentially forfeitable funds. This is a different kind of situation in a way. These funds were seized in order to give the court jurisdiction and then run proceeding. That is correct. It's like an attachment. It's as if the Attorney General sued somebody in absentia and had to attach something to get jurisdiction. Well, rather than suing somebody, we were suing the particular person. Well, here, they just sued it. It's an in-rem proceeding. Yes, Your Honor. But it's like an attachment. Okay. They can't proceed, in my view, with an in-rem proceeding without a rem erased. I think that that's exactly right. And I think that that is why absolute immunity should attach here. Now, turning Judge Rosenbaum to your point, again, I think Bajikhajian and the court actually said the issue was that the six figures, and I'm not recalling the exact amount that were seized, weren't being sought for forfeiture as illicit proceeds. It was strictly a punishment. So too with Tims, where the Land Rover that was seized was actually purchased, not with drug money, but with insurance proceeds from the plaintiff's father's death. Right. But I guess the point there would be, seize the $15,500 as proceeds. Then there's a maximum $6,000 fine. And yet, what's been frozen is the full $240,000 in the account. And so effectively, the reason for, I guess, for seizing it would be to the extent that it were going to be sought later as some type of a punishment. And that would be a problem. It probably doesn't matter. This is probably all academic. I'm just saying how I understood the argument. Fair enough, Your Honor. But I think that what you're describing sort of leads into the question that I think that you were asking, Appellant, about the Fourth Amendment issue of the notion that we only thought that we were able to seize $15,500 and that the remainder might have been sought as a punishment. The reason, Your Honor, that we sought to search and seize the bank account was that we expected to find further evidence of illicit proceeds in the bank account. So we had the search and seizure in April. We discovered that an entity called Brighton LLC had been distributing what they referred to as revenue shares across Alabama. One of those revenue shares from illicit gambling went to Appellant, was deposited in Appellant's account. We therefore had probable cause to think, okay, there's at least one revenue share here. There might be more. And I think an analogous context might... Can I ask you a question about that? The thing that makes it particularly, that raises a little bit of a flag, let me put it that way, is the fact that the motion to dismiss gets denied. And the very next day, the rest of the money gets released. And it seems somewhat coincidental, to say the least, I guess, that the rest of the money over the $15,500 would be released the day after the district court finds that a plausible case of bad faith has been made out and that there's been no indication that more than $15,500 is at issue. So, you know, I think that's where that comes from. And while you certainly may have been able to... I think you still have to have had probable cause to seize it in the first place, but in any case... That's right, yeah. Right. And so the question is, you didn't have probable cause, it seems like you didn't have probable cause to seize the other whatever amount over $15,500. Or if you did have probable cause, because there are no allegations in there about the rest of it. The only allegation is about the $15,500. And there are some things that I guess are incorrect in there as well. But even putting that aside, then it gets held for two months. And I mean, unless you were conducting the investigation that entire time, and it just coincidentally ended on the 8th or so, it does sort of beg the question, why August 9th? Why is that the date that the amount is released after that? Well, Your Honor, I believe that the amended forfeiture proceeding states that the investigation had concluded by that point and that we only decided that $15,500 was the amount that we were going to be pursuing. I would note, Your Honor, too, that as the Supreme Court has explained, we do not evaluate probable cause in hindsight. So the fact that the state eventually, after a full investigation, concluded that it was only going to pursue the $15,500 account, or excuse me, amount in the account shouldn't be held against the state. And then again, that gets us back to the probable cause to support more than the $15,500. Absolutely, Your Honor. And I'd like to address that if I might. Let me ask you, because there's an argument in the briefs that while you say that you were looking for proceeds, counsel has asserted that proceeds aren't forfeitable. So that as a matter of law, whether you have probable cause or not, if your theory is it's proceeds, you couldn't take it. Do you agree with that position that the statute doesn't allow for forfeiture of proceeds? So I'm actually not sure that the appellant made that argument. He, if I recall, his briefing said that it might, that revenues from a gambling operation, which would be stakes, money produced by stakes and bets, might not be proceeds. I fail to see the distinction there. I think that this is how casinos and gambling operations make money. The wagers and the stakes. But I guess the real question is, does the statute allow for forfeiture of proceeds? Well, Your Honor, proceeds are themselves synonymous with the language of the statute, which would be the, I believe it's stakes and gambling bets that are in the statute. These are synonymous terms that we're dealing with, as shown by the revenue share. These were stakes and bets under the statute equals proceeds? Well, yes, Your Honor. I think that's how a casino makes money. That may be, but is that what the statute says can be forfeited? Yes, Your Honor, because they are stakes and bets. They're going into this account. If I may ask your question head on, Judge Rosenbaum. The Supreme Court has explained that the question of probable cause reduces to, I'm quoting now, whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. The court has also explained that a state judge's probable cause determination is owed great deference. In this case, there are at least a couple of reasons to think that there may have been additional illicit proceeds in Mr. Pebway's account. A share of revenues and an ongoing concern will suggest that there are going to be periodic deposits in an account insofar as the entity continues to operate and produce revenues. So that alone, Your Honor, and the fact that we had evidence that there were, and I see that my time's expiring. May I continue? If you can finish briefly. Sure. We had evidence that there were illicit proceeds in the account. An analogy might be useful if you think about this in something like a child pornography investigation, where if we were to find evidence that an operation was sending illicit images or videos to a bunch of different accounts or computers across Alabama, we have evidence, even though no one would say there is probable cause that every single bit in a hard drive is going to be child pornography, police have probable cause to seize an entire hard drive itself and investigate it and search it for further evidence of crimes. And that's exactly like the fact pattern here. Thank you, counsel. Thank you, Your Honor. All right. Mr. Clemon, you have five minutes. Your Honor, first of all, it should be clear that the, I guess this is mine, it should be clear that the Attorney General did his investigation before he sought the seizure warrant. All you got to do is look at the affidavit and you will see the investigation is complete. But he should be applauded for doing that, shouldn't he? What I mean, we have enough prosecutors who proceed without looking at anything until afterwards. Maybe he should, but that takes him out of immunity. Because you said in the Marino case that when the prosecutor... Well, what do you say about, say, a U.S. attorney, the FBI comes to the U.S. attorney, they got an ongoing investigation, and the U.S. attorney is advising the investigators from a legal point of view how to proceed. And then they ultimately, an indictment is issued. Is the U.S. attorney acting as an investigator there? This is what the court said. The short answer is yes. Okay. In Marino, what you said is that... Well, if that's the case, it seems to me that what you're in effect saying is that let the investigators do their thing, don't supervise or anything. No, the prosecutor should not be actually involved in the investigation or give advice to the police officers who are investigating. That's what the law is. But let me make it clear that with respect to bets or stakes, the Alabama legislature, if it wanted to make proceeds forfeitable, could have said so. Instead, it said bets or stakes. Now, casinos make money not just off betting. I mean, sometimes they have concerts. They have concessions. They make money any number of ways, which are proceeds. But that's not what the Alabama misdemeanor gambling statute is directed at. Bets are proceeds. I mean, bets are stakes. And that's only it. And let me just say this, Your Honors. If General Marshall had filed the second petition instead of the first, we wouldn't be here. Because in the second forfeitable petition, he expressly says, we're only seeking $15,500. We're not seeking anything else because everything else cannot be connected to gambling activities. If he had done that, we would have had no problem. Of course, we still may have at some point talked about proportionality with respect to the $15,500. But we're not doing that in the state action. And it ought to be clear that with respect to what we do in action, it is completely separate. I believe, I think I've basically covered what I needed to say unless there are additional questions by the court. Thank you very much, Mr. Clark. And may the court bless indulgence. Thank you, counsel. We'll be in recess. Thank you.